# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BASES LOADED CORNER BAR, LLC, and
MARK R. LEMMINGER,

      Plaintiffs,

v.                                                         Case No. 15-cv-1541

THE VILLAGE OF JOHNSON CREEK,
et al.,

      Defendant.

## DECISION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On December 23, 2015, after the Village of Johnson Creek refused to issue it a liquor license, plaintiffs Bases Loaded Corner Bar, LLC (BLCB) and its owner, Mark Lemminger, filed this action under 42 U.S.C. § 1983. Plaintiffs complain that the defendant's refusal to conduct a hearing in connection with the liquor license amounted to a procedural due process violation. On April 5, 2017, Johnson Creek moved for summary judgment, arguing that BLCB was not entitled to a hearing and that Lemminger, as the LLC's owner, lacks standing to pursue this lawsuit. More recently, the parties consented to magistrate-judge jurisdiction. The motion for summary judgment will be denied in part and granted in part.

    I.    **Background**

On April 25, 2011, Johnson Creek amended Ordinance 150-7, which governs in part the granting and issuance of liquor licenses. Before the amendment, Ordinance 150-7 provided: "No license shall be granted for operation on any premises upon which taxes or

assessments or other financial claims of the Village are delinquent or unpaid." ECF No. 21-2. The Ordinance was amended to read: "No license shall be *issued* for operation of any premises upon which there is an obligation owed the Village or other financial claims, as set forth in Section 15-19 of this Code, remain delinquent or are unpaid." *Id.* (italics added). In the Village of Johnson Creek, therefore, the granting and issuing of a liquor license remain two distinct events.

On June 13, 2011, Johnson Creek's Village Board granted BLCB a renewal of its Class B Combination Beer & Liquor License. ECF No. 26 at 3. However, because BLCB owed back taxes, the village clerk refused to *issue* the already-granted license, forcing BLCB to cease operations at midnight on July 1, 2011. ECF No. 26 at 3-4; ECF No. 20. BLCB immediately sought and received a temporary restraining order from the Jefferson County Circuit Court staying the Village's action. ECF No. 21-4. The bar resumed operations at 2:30 p.m. on July 1, having been shut down only for a matter of hours. ECF No. 16 at ¶ 36.

Thereafter, plaintiffs filed this action under 42 U.S.C. § 1983 alleging that Johnson Creek violated BLCB's due process rights by effectively non-renewing BLCB's license without notice and a meaningful opportunity to be heard.[1] ECF No. 1. For his part, plaintiff Lemminger alleges that the non-renewal of his bar's license injured his reputation. ECF No. 26 at 3, 5.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] Plaintiffs originally included an equal protection claim in their complaint. ECF No. 1. However, the Plaintiffs subsequently stipulated to a dismissal of their equal protection claim and all but the current defendants. ECF No. 13.

Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Liberty Lobby*, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." *Fitzgerald*, 707 F.3d at 730 (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

3

### III. Discussion

#### A. Johnson Creek violated Due Process

As set forth above, the plaintiffs argue that Johnson Creek violated due process by failing to conduct any kind of hearing prior to refusing to issue BLCB's liquor license. A claim of procedural due process generally involves a familiar two-step inquiry: (1) whether the plaintiff was deprived of a cognizable property or liberty interest; (2) if so, whether the deprivation occurred without due process. *See Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017); *see also Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996) (same). Johnson Creek appears to concede for the purposes of its motion that BLCB had a valid property interest in its license and that it was deprived of its interest. The question is whether BLCB was owed any hearing prior to the license being non-renewed. Johnson Creek argues that no hearing was required because such a hearing would have been impractical.

Here, state law sets forth the process required when a municipality desires not to renew a liquor license. Wis. Stat. § 125.12(3) ("Refusals by local authorities to renew licenses") provides that the municipality may refuse to renew a license for certain causes set forth in section 125.12(2)(ag), which include keeping a "riotous house," selling alcohol to "habitual drunkards," or convictions for various drug offenses.

> Prior to the time for the renewal of the license, the municipal governing body or a duly authorized committee of a city council shall notify the licensee in writing of the municipality's intention not to renew the license and provide the licensee with an opportunity for a hearing. The notice shall state the reasons for the intended action. The hearing shall be conducted as provided in sub. (2) (b) and judicial review shall be as provided in sub. (2) (d). If the hearing is held before a committee of a city council, the committee shall make a report and recommendation as provided under sub. (2) (b) 3. And the city council shall follow the procedure specified under that subdivision in making its determination.

Wis. Stat. § 125.12(3).

A hearing is also required when the proposed license action is deemed a "suspension" or "revocation" of a license. Wis. Stat. § 125.12(2)(ar) ("The summons shall command the licensee complained of to appear before the municipal governing body or the committee on a day and place named in the summons, not less than 3 days and not more than 10 days from the date of issuance, and show cause why his or her license should not be revoked or suspended.") Thus, whatever nomenclature is used, any time a license is to be suspended, revoked, or not renewed, state law requires a hearing in advance. State law also provides for judicial review of the governing body's decision. Wis. Stat. § 125.12(2)(d). *See Tavern League of Wisconsin v. City of Madison,* 131 Wis. 2d 477, 489, 389 N.W.2d 54, 58 (Ct. App. 1986) ("the city concedes these rules and agrees that, by prescribing the procedures for nonrenewal, suspension or revocation of liquor licenses in sec. 125.12, Stats., the state has established the minimum due process requirements city officials must follow in taking such actions. The statutory procedures include notice, a full hearing and the right to judicial review.") The state court of appeals has concluded that the "semantics" as to any distinction between *granting* a license and *issuing* a license do not change the fact that state law requires a hearing. 131 Wis.2d at 490, 389 N.W.2d at 58.

It is of course true that the process mandated by state law does not itself govern which procedures, if any, are required by the Due Process Clause of the United States Constitution. This is because "[m]any state and local licensing schemes provide procedural protections that are far more elaborate than due process requires." *Simpson*, 860 F.3d at 1006. Even so, the procedures required by state law can speak to the context of the deprivation and whether a predeprivation hearing would have been impractical under the circumstances. Here, given that state law *requires* a predeprivation hearing before a license is nonrenewed, Johnson

5

Creek's suggestion that a predeprivation hearing would somehow have been impractical is hard to credit. In fact, courts routinely hold that the renewal of a license is exactly the kind of event that triggers the need for a hearing. *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009) ("Like revocation during the term of a license, nonrenewal requires cause and a hearing."); *Tavern League,* 131 Wis.2d at 488-90, 389 N.W.2d at 56-58.

Johnson Creek believes this case presents an exception, however. Relying on *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), it argues that its clerk's withholding the license was a random and unauthorized event, and thus no *pre*-deprivation hearing would have been practical or required. "*Parratt* essentially stands for the rule that when predeprivation hearings are impractical because the actions of the state officers were 'random and unauthorized' the state is only responsible for providing postdeprivation remedies." *Veterans Legal Def. Fund v. Schwartz,* 330 F.3d 937, 940 (7th Cir. 2003). The Seventh Circuit has explained that "the dispositive factor in determining whether *Parratt* will indeed apply in a given situation is still whether the state actor's conduct is 'random and unauthorized' or, as the Court has rephrased it, whether the state actor's conduct is 'predictable and authorized.'" *Schwartz,* quoting *Easter House v. Felder*, 910 F.2d 1387, 1400 (7th Cir.1990).

"Situations involving such random and unauthorized conduct are relatively rare." *Simpson*, 860 F.3d at 1007. Indeed, where the deprivation involves a license, "[t]he existence of a license or permit implies the existence of a legal framework," rendering any deprivation that is random and unauthorized an "aberration." *Id.* Here, the state actor's conduct was both predictable and authorized. Village Board Resolution 32-11, approved on March 21, 2011, found that BLCB owed some $14,030 in back taxes and noted that its liquor license would

expire on June 30, 2011; it further resolved that "any renewal . . . shall be conditioned upon compliance with all provisions of . . . the Code of the Village of Johnson Creek." ECF No. 18-1 at 50. The resolution specifically cited Section 150-7, the provision precluding issuance of a license to entities owing back taxes. The resolution further directed the clerk-treasurer to mail a copy of the resolution to BLCB. Similarly, Resolution 80-11, passed on June 13, 2011, granted BLCB's license "subject to compliance with all municipal code requirements by June 30, 2011 for reissuance of the license and the Village Administrator and/or Village Clerk-Treasurer have the authority to effectuate this resolution." ECF No. 17-2. Thus, the clerk's withholding issuance of the license was explicitly contemplated as part of the renewal process itself, and, as such, it was both predictable and authorized by the Village Board. In fact, it is difficult to envision how an act that is specifically discussed by the Village's board, and authorized by ordinance, could be deemed "random" or "unauthorized." As the Seventh Circuit found in *Simpson:*

> Simpson's third amended complaint . . . does not allege "random and unauthorized" actions by County officials. Rather, it alleges official conduct sanctioned by the County. The County had a septic ordinance that plainly described the process for the placement of septic installers on a register and (not so plainly) described the process for their removal. When County Health Officer Page revoked Simpson's license, he acted pursuant to his broadly delegated powers derived from the ordinance. By its terms, the ordinance gave Page as agent for the Board of Health broad discretion to remove any person who had demonstrated "inability or unwillingness to comply" with the ordinance. Page was not acting unpredictably or breaking the rules: he did exactly what the ordinance told him to do. The possibility of license revocation without due process was not unforeseeable. It was authorized in the ordinance itself.

860 F.3d at 1008. The same holds true here. Johnson Creek was acting not unpredictably, but exactly how it said it would act: it would not issue a renewed license until back taxes were paid. Johnson Creek concedes that it provided substantial notice to BLCB by sending it a

7

copy of the March 2011 resolution indicating that its taxes were delinquent, and that its license renewal was subject to Section 150-7(c) of the municipal code. This was exactly the kind of situation that would call out for a hearing at some period immediately following the notice.

Johnson Creek also argues that "Plaintiffs' own conduct in failing to pay the taxes timely and completely . . . shows the liquor license non-renewal could not have been anticipated, thereby making it impractical to provide pre-deprivation procedures." ECF No. 15. But this has things backwards. In determining whether *Parratt* applies, courts consider the conduct of the *defendant*, not the plaintiff. In many due process cases, the deprivation is occasioned by some kind of unexpected or random conduct on the part of the plaintiff: failure to pay taxes, an employment infraction, or a health code violation. Although the governing authority cannot anticipate such conduct in every instance, it may still react to the conduct in a predictable way, for example, by sending a notice regarding the infraction and conducting a hearing soon after. It is only when the government actor's conduct is unpredictable or random that the need for a predeprivation hearing vanishes. For example, in *Miles v. Village of Dolton,* on which Johnson Creek relies, police officers physically confiscated plaintiff's liquor license in the middle of the night because, as the plaintiff alleged, the officers didn't like the attitude of the bar's owner. No. 15-CV-5017, 2016 WL 1161293 (N.D. Ill. Mar. 24, 2016). Obviously, the officers were not going to conduct a hearing in the middle of a bar. Here, the opposite is true: the Village acted in a deliberate, predictable fashion, pursuant to its own ordinances.

Johnson Creek also argues that, having given BLCB notice of its delinquent taxes, the ball was in BLCB's court to simply pay those taxes. In other words, BLCB should not complain that it never received a hearing because all it had to do was pay up. However, this

confuses substance with process. The claim presented here does not involve whether BLCB was actually delinquent on its taxes or not, it involves the process Johnson Creek must provide before making that determination.

In sum, because *Parratt's* narrow exception to the predeprivation hearing requirement does not apply here, the plaintiff was entitled to be given that hearing. Nor does it matter whether any *post*-deprivation procedures might have been available. "A postdeprivation remedy does not satisfy due process, however, if a predeprivation hearing is practical or if the postdeprivation remedy is inadequate. . . . Since the state was in a position to provide a meaningful predeprivation hearing, the Due Process Clause required the state to do so." *Greco v. Guss*, 775 F.2d 161, 171 (7th Cir. 1985). *Bradley v. Vill. of Univ. Park, Illinois*, 929 F.3d 875, 878 (7th Cir. 2019) ("[A]lthough there was ample opportunity for a hearing, Bradley received no pretermination notice or hearing. Those points of agreement suffice to prove a due process claim under § 1983.") Because the plaintiff has established a violation of procedural due process, Johnson Creek's motion for summary judgment will be denied.

### B. Lemminger lacks standing

Johnson Creek also argues that plaintiff Lemminger, the owner of Bases Loaded Corner Bar, LLC, lacks standing to assert a claim under 42 U.S.C. § 1983. Johnson Creek is correct. "'As a general principle, a corporate shareholder does not have an individual right of action against third persons for damages to the shareholder resulting indirectly from injury to the corporation.'" *Maryland Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1498 (E.D. Wisc. 1996) (citing *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989). Indeed, "a plaintiff-shareholder cannot maintain a civil rights action [under 42 U.S.C. § 1983] for

9

damages suffered by the corporation." *Flynn*, 881 F.2d at 450 (citing *Erlich v. Glasner*, 418 F.2d 226, 227-28 (9th Cir. 1969).

An exception exists where a shareholder in a corporation can show that he or she suffered an injury that is "direct[,] . . . 'separate and distinct from those suffered by other shareholders.'" *Flynn*, 881 F.2d at 449 (quoting *Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185, 1194 (7th Cir. 1985)). However, the facts here do not fit that exception. Lemminger asserts he has standing to pursue this action because the requirements surrounding the issuance of a Class B liquor license are unique. Namely, because the state statute requires that "an agent must meet municipal standards 'with respect to character, record and reputation,'" the failure of Johnson Creek to issue the license amounts to a distinct and separate injury to Lemminger, the agent. ECF No. 19 (citing Wis. Stat. § 125.51(3)(c)). However, this argument misses the mark both on the facts and the law.

Factually, both Plaintiffs and Johnson Creek agree that the village clerk refused to issue the license because the clerk believed that BLCB was delinquent on its local taxes. That explanation was set forth in Village Board Resolution 32-11. The record contains no facts to support the suggestion that the clerk refused to issue the license for any reason having to do with Lemminger's personal character or reputation, and thus it is purely speculative to conclude that Lemminger suffered any harm distinct from Bases Loaded Corner Bar, LLC. As their sole legal support, Plaintiffs cite to the unpublished case *L.A. Glove v. City of Lansing*, 2003 U.S. Dist. LEXIS 2040, at *6-8 (W.D. Mich. Jan. 30, 2003). However, *L.A. Glove* in fact supports the opposite conclusion. In *L.A. Glove*, when the City of Lansing failed to renew a nightclub's liquor license, the nightclub and its owners brought suit alleging racial

discrimination, arguing that the City's refusal to issue their liquor license caused "humiliation and extreme mental and emotional distress." *Id.*

The *L.A. Glove* court held that the club owners lacked standing, ruling that the mental and emotional injuries are derivative of those suffered by the nightclub, and thus, "[w]hile plaintiffs may indeed have sustained such injuries, they did so on the basis of discriminatory conduct aimed at their corporate entity." *Id.* Likewise, here the unconstitutional conduct of Johnson Creek was aimed solely at BLCB, an LLC owned by Lemminger, and thus his individual claims are derivative of the LLC's. Therefore, Lemminger lacks standing to bring this claim in his individual capacity.

### IV. Conclusion

For all the foregoing reasons, **IT IS HEREBY ORDERED** that Johnson Creek's motion for summary judgment is **GRANTED** in part: all claims brought by Plaintiff Lemminger are **DISMISSED**. The motion is **DENIED** in all other respects. The clerk will place the case on the calendar for a telephonic scheduling conference.

**SO ORDERED** this 23rd day of June, 2020.

_____
STEPHEN C. DRIES
United States Magistrate Judge